**SALA SALA Jr., Plaintiff**

v.

**TUIKA TUIKA Jr. and MAFA TUIKA, dba "SIX ELEVEN"**

High Court of American Samoa
Trial Division

CA No. 44-90

February 5, 1991

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, VAIVAO, Associate Judge.

Counsel: For Plaintiff, Robert A. Dennison III
For Defendants, Steven H. Watson

Plaintiff alleges defendant's breach of lease agreement and sues for the following damages: lost profits, lost value of leasehold interest, personal property converted, and unreturned security deposit. Plaintiff also seeks exemplary damages, alleging that defendants' actions were "willful and wanton." The referenced leasehold is embodied in a written "Lease Agreement" entered into by the parties on September 1, 1986, for a stated term of three (3) years. The lease's expiry date is given as September 1, 1989; however, the instrument further provides for:

> [an] option to renew for two (2) years, provided that no violations have occurred during the original term of the lease. Parties hereto may re-negotiate [sic] for renewal of this lease should such desire be expressed by Lessee to Lessor in writing within the last 30 days of this lease.

It is the meaning of this provision which is basically the source of the dispute between the parties. The immediate issue is whether or not the lease was renewed --- plaintiff claims that it was, whereas the defendants say that it was not.

## I. Renewal

The quoted provision starts out looking like a familiar conditional "option" to renew. However, the immediately succeeding sentence also looks contradictory; it arguably suggests that renewal is subject to the lessors' discretionary cooperation (the parties "may" renegotiate renewal). Indeed, this is defendants' argument. Defendants submit that the option is not really an option and that the lease agreement merely contemplates a renewal if in fact the lessors agree. Defendant Tuika Tuika denied agreeing to a renewal of the lease and explains his acceptance of rent after the expiration of the original term in terms of a holdover tenancy on a month to month basis.

We disagree with defendants' reading of the lease. Although somewhat awkwardly expressed in the instrument,[1] we are satisfied that an option to renew was given to the lessee. The rental clause also contains the following language:

---

[1] The document looks very much homemade; it obviously reflects a number of different lease precedent forms inartfully put together without too much concern for coherency.

> Lessee agrees to pay without demand, to Lessor, as rental for the demised premises the sum of Five Hundred Dollars ($500.00) per month for the first six months, and Seven Hundred and Fifty ($750.00) thereafter until the expiration of *five years should Lessee exercise and Lessor accepts the Option.* (Emphasis added).

What is quite clear from the above is that both the renewed term (two years) and rent ($750.00 a month) were unambiguously fixed by the parties from the outset. Thus, the provision relating to re-negotiation refers only to those other terms and conditions of the lease, excepting term and rent. Furthermore, the option is not at all contradicted by the language, "the parties *may* re-negotiate for renewal," because this phrase can only sensibly mean that the parties may either go with the old terms of the lease, or they may re-negotiate where appropriate.

We are also satisfied that the lessor had accepted renewal of the lease. After being informed of the lessee's desire to renew, the lessor continued to accept rent while the lessee continued to remain in possession. Significantly, the rental sum being paid and received was exactly that rental figure stipulated as being payable throughout the renewed period. Having, therefore, accepted from the lessee that very performance envisaged by the renewal option while at the same time acquiescing in the lessee's continuing possession of the demised premises, the lessors cannot now be heard to deny the exercise of the option. Moreover, the inference is compelling; acceptance by the lessors of the lessee's performance also constituted a waiver by the lessors of their right to refuse renewal of the lease by reason of lessee's breach or non-performance.

## II. Breach

After expiration of the lease's original term, on September 1, 1989, "at midnight," the lessee duly made the rent payments for the next three months. In January 1990, however, the lessee could only tender the lessors a partial payment on the rent with the explanation that business had been slow over the passing holiday period. In fact, this turned out to be the last payment of rent by the lessee. Hurricane "Ofa" struck in the following month of February, and its high winds tore off some roofing to the demised premises, resulting in extensive water damage to the interior of the premises and much of its contents. The

31

premises remained in that condition for several months thereafter. In the interim, plaintiff was out of business while the defendants were out of rents.

This situation appeared to be fostered in part by the fact that neither party had any clear idea as to each's rights and obligations under the lease. Among other things, the instrument was completely silent on the contingency of ruinous storm damage. In addition, the evidence was also clear that plaintiff's financial circumstances were such that he was not in a position to undertake any sort of repairs himself. Rather, he could only take a "wait and see" approach as to whether the lessors would repair the roof. The lessors, on the other hand, were similarly looking to the lessee to do the repairs, and when it became apparent that such repairs were unlikely, the lessors began to be more concerned with the likelihood that the lease was coming to an end. This became evident following Tuika Tuika's confronting plaintiff sometime in March about his intentions to recover the premises. Plaintiff told Tuika that he did not have the money to do any repairs. He also informed Tuika about his unsuccessful attempts to find an investor or partner and, indeed, he also solicited Tuika's assistance in this regard. Thus, when plaintiff was seen shortly thereafter to be removing things from the premises, the defendants (again without any clear idea as to rights under the agreement) asserted claims to the furnishings and equipment in the premises as if the lease had concluded.[2]

An argument ensued as to who owned what in the building, and the defendants thwarted any attempts by plaintiff to take anything out of the premises. This triggered plaintiff's filing of suit in which he also sought provisional relief to enjoin the defendants from interfering with his removal of property which he considered was his. Fortunately, with the assistance of counsel, the parties did manage to sort out much of who-owned-what in the premises. Plaintiff, however, is minus two electric organs, two air conditioners, and miscellaneous bar stock which he claims to have been converted by the defendants.

---

[2] Clause 7 of the lease states that "improvement [sic] and repair [sic] permanently attached to the leased premises shall become part of said premises." Similarly, clause 19 provides that "fixtures and attachments" become part of the premises "including bar counter and all parts attached to it, the booths and tables remain with leased premises at the termination of the lease agreement."

32

On the foregoing, we conclude that the lease had, for all intents and purposes, come to an end following the destruction of the premises. As noted above, the lease did not provide for the sort of contingency which materialized with hurricane "Ofa." Neither party had any obligation to restore the premises which for all practical purposes was substantially damaged.[3] From plaintiff's financial point of view, the premises may just as well have been totally destroyed as he was in no position whatsoever to take any remedial action. Until restoration of the premises, plaintiff could not get back into business, let alone think about paying up the reserved rent which, incidentally, was payable "without demand."[4] Therefore, as neither party did anything to reinstate the premises, we infer mutual cancellation or rescission in the circumstances.

*III. Relief*

There being no breach of the lease, plaintiff has no claim for which damages may be granted for lost profits and lost value of leasehold interest. Additionally, we see no basis for exemplary damages. We hold, however, that defendants are liable for plaintiff's missing property. When they took possession of the premises and its contents to the exclusion of plaintiff, a bailment situation arose. Thus as bailee, the lessors owed lessee a duty to look after his property while it remained in their custody. *Garcia v. Galea'i*, 15 A.S.R.2d 14, 17 (1990). At the same time, the cases have consistently held that a bailee's failure to return the bailor's property upon the latter's demand constituted a *prima facie* case of culpable negligence. *See* Annotation, 65 A.L.R.2d 1228, 1233. In the instant matter, there was no satisfactory explanation or accounting given by defendants for the missing bailed items and the inference, therefore, arises that the defendants had failed to take due care

---

[3] Lessee's covenant to repair was limited to damage attributed to his use and occupation excepting damage arising out of an "act of God," *see* clause 12, and fair, wear, and tear, *see* clause 1. On the other hand, absent agreement or statute, the unyielding rule at common law is that the lessor is under no obligation to rebuild or restore premises destroyed without his fault. *See* 49 Am. Jur.2d, Landlord and Tenant § 774, at 715.

[4] Plaintiff appeared to harbor the misconception that he gained some grace period with late payment of rent when the landlord failed to timely show up and collect the rent.

of plaintiff's missing property. *See Commercial Corp. v. N.Y. Barge Corporation*, 314 U.S. 104 (1941). Accordingly, we hold that the defendants are liable in damages to plaintiff for the latter's lost property, to wit; two electric organs (storm exposed), two air-conditioners purchased in 1987 (18,000 btu), and miscellaneous bar stock. We fix damages for the value of these items as follows: the organs, $950.00; the air conditioners, $650.00; and the bar stock, $1,000.00.

We also conclude that plaintiff is entitled to a full refund of the security deposit of $1,000 which he made with the lessors at the outset of the lease. As noted above, the lessee's covenant to repair is limited to damage arising through his use and occupation of the premise *excepting* damage arising out of "an act of God," from "normal wear and tear," or "reasonable use and wear . . . and damages by elements." *See* Lease Agreement, clauses 1, 12, and 13. The "wear and tear" exception must be read in context with the lease's underlying purpose --- that the demised premise would be used as a "restaurant and bar." In this regard, the public health directives pointed to by defendants as demonstrating pre-hurricane damage hardly revealed anything beyond the sort of wear and tear normally expected from bar patrons. In any event, the extensive damage evident with the demised premises at the time the lessors took over was that occasioned by hurricane "Ofa." This is damage for which plaintiff is not responsible and, thus, defendants' counter-claim for damage to the premises is without foundation. Fair wear and tear to the premises generated by bar patrons was something which the defendants had bargained for in return for rent. On the other hand, hurricane damage was not an obligation bargained for by the lessee.

Plaintiff shall have judgment against the defendants for the sum of $3,600.00 plus court costs. The defendants shall take nothing on the counter-claim.

It is so Ordered.